IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 625 3RD STREET ASSOCIATES, LP, a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANT CREDIT UNION, an Illinois corporation, STANLEY ABRAMS, an individual, and DOES 1 through 15, inclusive,<br><br>Defendants.<br>_____ / | No. C 09-00564 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTION**

This action involves a dispute over a real estate purchase-and-lease-back agreement. The complaint asserts ten state-law claims including for breach of the lease agreement and various business torts. All ten claims are asserted against Alliant Credit Union; two are also asserted against Stanley Abrams. This order finds that six of the claims against defendant Alliant are preempted by federal law. Therefore, Alliant's motion to dismiss claims four and six through ten is **GRANTED**. Furthermore, Alliant's motion to dismiss claim five is also **GRANTED** because the allegations therein against Alliant (as opposed to Abrams) fail to satisfy the requirements of Rule 9(b). On the other hand, Alliant's motion to dismiss claims one through three is **DENIED**. Finally, defendant Abrams' motion to dismiss the allegations in claims four and five against him is **DENIED**.

**STATEMENT**

This suit arises from Kaiperm Federal Credit Union's alleged breach of a purchase-and-lease-back agreement with plaintiff 625 3rd Street Associates. The office space was for the credit union's store. Approximately one year after entering the lease agreement, Kaiperm ceased paying rent under the lease when the National Credit Union Administration initiated involuntary liquidation of Kaiperm. This case involves a dispute over the lease agreement.

Plaintiff is in the real estate business. In May 2007, plaintiff executed a letter of intent to purchase an eight-million dollar Oakland property from Kaiperm in exchange for Kaiperm's execution of a fifteen-year lease on the property to commence upon the close of escrow. Plaintiff performed due diligence to review Kaiperm's publicly-available financials. All seemed sunny. Plaintiff felt Kaiperm was adequately capitalized and financially stable.

Between May 2007 and August 2007 Kaiperm and its CEO, defendant Stanley Abrams, allegedly informed plaintiff that Kaiperm was in good financial standing, that the publicly available on-line financial statements were accurate, that Kaiperm had the wherewithal to perform on the lease agreement, and that the eight-million dollar purchase price to be paid by plaintiff to Kaiperm was to be used to improve Kaiperm's liquidity. All this was untrue, or so it is alleged.

The purchase-and-lease-back agreement was then finalized. Kaiperm became the tenant. A few months later, Alliant allegedly became the exclusive managing agent of Kaiperm's business and operations. During this period, Alliant purportedly abandoned an existing financial plan aimed at ensuring Kaiperm's long-term stability. Instead, Alliant initiated a plan of operation designed to make Kaiperm insolvent, thereby compelling the NCUA to intervene, all pursuant to a plot to use the NCUA's statutory power to repudiate rent obligations.

In May 2008 Kaiperm's attorney informed plaintiff that Kaiperm was in financial trouble, that Alliant would be merging with it, and that Alliant wished to negotiate a deal regarding the remaining lease obligations. In June 2008, Alliant informed plaintiff that all subsequent dealings should be made solely with Alliant. Plaintiff alleges that Kaiperm's board

1  of directors delegated its oversight functions and responsibilities to Alliant's representatives at
2  that time. In August 2008, after plaintiff and Alliant were unable to negotiate an agreement on
3  a buy-out price for the lease, Alliant informed the NCUA that it would not merge with Kaiperm
4  unless the NCUA placed Kaiperm in liquidation and excused any remaining obligations under
5  the lease.

On September 26, 2008, the NCUA placed Kaiperm in involuntary liquidation and executed a purchase-and-assumption agreement by which Alliant was given Kaiperm's business and assets and liabilities, with the exception of the lease. On October 23, 2008, the NCUA notified plaintiff that it was repudiating any remaining lease obligations under the purchase-and-lease-back agreement. In plaintiff's view, it has been the victim of a plot to unload the property, to extract eight million dollars from plaintiff, and then to extinguish the stream of rent payments via the neat trick of NCUA repudiation.

Plaintiff filed this lawsuit in Alameda County Superior Court on December 30, 2008, against defendants Alliant and Abrams. As stated, plaintiff asserts ten state-law claims for breach of contract and business torts. Alliant removed the case to federal court, and a motion to remand was denied. Defendants Alliant and Abrams each now bring a motion to dismiss.[1]

**ANALYSIS**

**1.   DEFENDANT ALLIANT CREDIT UNION'S MOTION.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Material factual allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party, but courts are not bound to accept as true "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. In order to defeat a Rule 12(b)(6) motion to dismiss, a claim

---

[1] Specifically, the complaint asserts the following claims: (1) interference with contractual relations; (2) inducement to breach contract; (3) interference with prospective economic gain; (4) intentional misrepresentation; (5) fraudulent concealment; (6) rescission; (7) breach of lease; (8) breach of contractual warranties; (9) breach of the covenant of good faith and fair dealing; (10) bad faith denial of the existence of contract.

3

1  must be factually supported and plausible on its face — conclusory legal allegations and speculative inferences do not suffice. *Ibid.*

Courts may consider material not appended to the complaint such as court filings and matters of public record without converting a motion to dismiss into one for summary judgment. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). This order finds that the documents submitted by the parties are properly the subject of judicial notice, at least as to the fact and date of their publication. Fed. R. Evid. 201(b)(2).[2]

### A. Preemption and De Facto Merger (Claims Four and Six through Ten).

Six of the ten claims in this action presuppose that a de facto merger took place between Alliant and Kaiperm. These claims are, respectively, rescission, breach of lease, breach of contractual warranties, breach of the covenant of good faith and fair dealing, bad faith denial of existence of contract, and intentional misrepresentation. In each of these claims, plaintiff seeks to impose the alleged liabilities arising from the purchase-and-lease-back agreement on Alliant as Kaiperm's successor under the state-law doctrine of de facto merger.

Plaintiff does not dispute the NCUA's statutory authority to administer a credit union's assets and liabilities during a liquidation proceeding. Instead, plaintiff argues that Alliant is liable on the lease because Kaiperm *had already merged* into Alliant, and therefore ceased to exist, before the NCUA intervened. While plaintiff concedes that no statutory merger ever took place between Kaiperm and Alliant, plaintiff maintains that these two credit unions nevertheless merged under the de facto merger doctrine.

The de facto merger doctrine has been applied in situations where the assets of one company are transferred to a successor without an exchange of consideration that could be used to offset the merging company's liabilities. A five-factor test governs whether a transaction cast in the form of a transfer of assets actually achieved the same practical result as a merger. This test considers whether: (1) the consideration exchanged for the assets was solely in stock; (2) the successor continued the same enterprise after the transfer; (3) the shareholders of the

---

[2] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

4

1  merging company became shareholders of the successor;  (4) the merging company was
2  liquidated;  and (5) the successor assumed the liabilities necessary to carry on the business of
3  the merging company.  *See, e.g., Marks v. Minnesota Mining & Mfg. Co.*, 187 Cal. App. 3d
4  1429, 1436.  If the fact finder determines that a de facto merger has occurred, courts may
5  impose the liabilities of the merging entity upon the successor.

6  As stated, plaintiff seeks to impose the alleged liabilities arising from the purchase-and-lease-back agreement on Alliant as Kaiperm's successor.  Alliant contends that the de facto merger test, hence the doctrine of successor liability, is preempted because it would result in a conflict between state and federal law governing the merger activity of federally insured credit unions.  Specifically, Alliant argues that plaintiff's action, which is based on the state law theory of de facto merger, is preempted because it explicitly conflicts with NCUA's statutory responsibilities and regulations.  NCUA regulations provide, *inter alia*, that "[a] federally-insured credit union must have the prior written approval of the NCUA before merging with any other credit union."  12 C.F.R. § 708b.101(b).

15  The NCUA was established by Congress under the Federal Credit Union Act, 12 U.S.C. 1752a, to fulfill the "public mission" of credit unions.  Credit Union Membership Act, H.R. 1151, 105th Cong. § 2(3) (1998).  Federal credit unions are cooperative associations organized for the "purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes."  12 U.S.C. 1752(1).  The board is to be "broadly representative of the public interest" and is given wide congressional latitude to ensure the stability and financial soundness of federally-insured credit unions.  12 U.S.C. 1752b, 1756.

22  In the present case, claims four and six to ten necessarily challenge the NCUA's express repudiation of the lease by seeking to keep the lease alive through a state-law de facto merger.  In addition, no merger is valid, de facto or otherwise, unless pre-approved by the NCUA.  12 C.F.R. 708b.101(b).  This is a two-fold direct conflict with federal law and is barred by federal preemption.  Thus claims four and six to ten must be dismissed as preempted.

5

### B. Contractual Interference (Claims One through Three).

By contrast, plaintiff's interference with contractual relations, inducement to breach contract, and interference with prospective economic advantage claims are not preempted for the following reasons. These claims attack Alliant's conduct between May 2008 and September 26, 2008 — *i.e.*, *before* NCUA entered the picture. Allegedly, Alliant intentionally "operated Kaiperm in such a way as to warrant the NCUA's intervention," thereby breaching the parties' lease agreement. Alliant argues that these tortious interference claims should be dismissed because they are preempted by federal regulations and the First Amendment, and because they fail to state a plausible claim for relief. For the following reasons, each of these attacks fail and Alliant's motion to dismiss plaintiff's first three claims is denied.

\*     \*     \*

These three claims are not preempted. The claims do not confront the later actions undertaken by the NCUA. Rather, plaintiff's interference claims challenge Alliant's conduct between May 2008 and September 2008 before the NCUA's intervention. According to the complaint, Alliant operated Kaiperm in such a way as to thwart its strategic stability plan and to weaken its financial status to the point that the NCUA would be forced to place Kaiperm in liquidation. Plaintiff seeks to demonstrate that, but for Alliant's conduct, Kaiperm's level of capitalization would not have warranted intervention by the NCUA.

These claims are not preempted or barred by the NCUA's statutory powers because the claims attack Alliant's conduct between May 2008 and September 2008, but do not attack the NCUA's intervention. If, for example, an officer looted a company to the point of insolvency, the officer could not claim his crime was immune from state law challenge merely because the insolvency opened the way for federal liquidators to step in.

Contrary to Alliant's assertion, the First Amendment does not protect interference with contracts via looting or mismanaging a company to the point that seeking federal assistance is required. Plaintiff's interference claims only allege that Alliant deliberately mismanaged Kaiperm, which in turn led to a drop in its capitalization, intervention by the NCUA, and the eventual repudiation of the lease agreement. These claims are not premised on any

6

communication between Alliant and the NCUA and thus are not barred by the First Amendment.

\*       \*       \*

Claim one (interference with contractual relations), moreover, states plausible grounds for relief under Rule 12(b)(6). The elements of interference with contractual relations in California are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998). Contrary to Alliant's assertion, this tort does not require wrongful conduct by the defendant apart from the interference. In fact, the California Supreme Court held in *Quelimane* that "[i]ntentionally inducing or causing a breach of an existing contract is . . . a wrong in and of itself;" therefore, "[w]rongfulness independent of the inducement to breach the contract is not an element of the tort of intentional interference with existing contractual relations. *Ibid*.

The complaint alleges facts sufficient to support the contractual interference torts. Furthermore, this order rejects Alliant's argument that, because mismanagement cannot constitute interference under California law, plaintiff has pleaded himself out of court by alleging Alliant's succession to Kaiperm through the de facto merger theory. A plaintiff can plead two claims in the alternative. Alliant's motion to dismiss these claims is accordingly denied without prejudice to a summary judgment motion after an opportunity for discovery.

Plaintiff pleads enough facts to satisfy the elements of this tort. There is no dispute that there was a valid contract for the lease between plaintiff and Kaiperm. The complaint alleges that Alliant offered to buy out the lease from plaintiff as early as May 2008, which satisfies the second element of the tort — that the defendant have knowledge of the contract. The complaint also alleges that Alliant operated Kaiperm in such a way as to, in effect, drive Kaiperm into liquidation and thus manipulate a repudiation of the lease obligation. Again, by way of

1  example, if an officer looted a company and drove it into the arms of liquidators, his actions
2  could not be immunized merely because the liquidators had the duty to step in.

3  With respect to claim two (inducement to breach contract), it too states plausible
4  grounds for relief under Rule 12(b)(6). The elements for inducement to breach contract are
5  similar to those for interference with contractual relations. Under California law, this tort
6  requires that the defendant "had knowledge of the existence of the contract and intended to
7  induce a breach thereof, that the contract was in fact breached resulting in injury to plaintiff,
8  and the breach and resulting injury must have been proximately caused by defendant's
9  unjustified or wrongful conduct." *Freed v. Manchester Serv., Inc*., 165 Cal. App. 2d 186
10 (1958). Contrary to Alliant's assertion, this tort does not require wrongful conduct by the
11 defendant apart from the interference. *See Quelimane*, 19 Cal. 4th at 55. As described in the
12 analysis of the interference with contractual relations claim, plaintiff's complaint satisfies each
13 of the elements for this tort.

14 This order rejects Alliant's argument that its actions were "justified" as a defense to the
15 inducement to breach claim since they were protected by the First Amendment. In California, a
16 complaint can only be dismissed if the court finds "justification on the face of the complaint for
17 defendant's interference with plaintiff's contractual relations." As previously discussed,
18 plaintiff's inducement to breach claim is based on Alliant's alleged mismanagement of
19 Kaiperm. The First Amendment privilege would likely shield Alliant's communications with
20 the NCUA, but as the complaint attacks Alliant's mismanagement of Kaiperm before, not after,
21 the NCUA's intervention, this defense does not apply. If an officer loots a company then
22 invites the liquidators in, the looting is not immune merely because the invitation itself may be
23 protected speech. Accordingly, this order rejects Alliant's assertion that the inducement to
24 breach was justified on the face of the complaint.

25 With respect to claim three (interference with prospective economic advantage), it also
26 alleges plausible grounds for relief under Rule 12(b)(6). The elements of interference with
27 prospective economic advantage in California are: "(1) a relationship between the plaintiff and
28 some third party with the probability of future economic benefit to the plaintiff; (2) the

8

1 defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference itself,
2 by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;
3 and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."
4 *Salma v. Capon*, 161 Cal. App. 4th 1275 (2008). The California Supreme Court explained in
5 *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376 (1995), that a plaintiff must plead that
6 "the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in
7 conduct that was wrongful by some legal measure other than the fact of interference itself." *Id.*
8 at 393. In explaining the meaning of "wrongful acts," that decision upheld the plaintiff's jury
9 instruction which defined "wrongful acts" as conduct "outside the realm of legitimate business
10 transactions" and that "[w]rongfulness may lie in the method used or by virtue of an improper
11 motive." *Id.* at 380 n.1.

12 Plaintiff's complaint asserts all the necessary facts to plausibly satisfy each element of
13 this claim. The lease agreement between plaintiff and Kaiperm was of probable future
14 economic benefit to plaintiff. As discussed above, Alliant knew of the lease agreement and that
15 the lease agreement was actually disrupted by the NCUA's intervention. Alliant, however,
16 attacks this claim with the argument that plaintiff does not identify any conduct on the part of
17 Alliant that is "wrongful by some legal measure" other than the interference itself.
18 This argument is rejected. The wrongful conduct can be reasonably inferred from the
19 complaint. The complaint alleges that Alliant had a malicious intent to weaken Kaiperm to the
20 point of compelling the NCUA to place it in liquidation and thus acquire Kaiperm's assets
21 without any lease obligations. This satisfies both the improper motive and the "outside the
22 realm of legitimate business transactions" tests for wrongful acts as outlined in *Della Penna*.
23 Finally, the complaint meets the requisite plausibility requirement for causation under Rule
24 12(b)(6) under the analysis applied in regard to the interference with contractual relations claim.

25 Accordingly, this order denies Alliant's motion to dismiss plaintiff's contractual
26 interference claims.

9

### C.  Fraudulent Concealment (Claim Five).

Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.  A pleading is sufficient under Rule 9(b) if it "identifies the time, place, and nature of the alleged fraudulent activities." In cases of corporate fraud, however, the pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual.  Rule 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend.  *Bly-Magee v. California*, 236, F.3d 1014, 1018 (9th Cir. 2001).

A claim for fraudulent concealment in California requires knowing concealment or non-disclosure by a defendant with the intent to defraud, which induces justifiable reliance and causes injury to the plaintiff.  *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007).  "Fraud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of the fact."  *Ibid.*  Thus, the defendant must be under a duty to disclose some fact to the plaintiff to state a cause of action for fraudulent concealment.  *Hahn v. Mirda*, 147 Cal. App. 4th 740, 745 (2007).

As discussed earlier in this order, Alliant's succession to Kaiperm's liabilities on a theory of de facto merger liability is barred by federal preemption.  The complaint, however, suggests a claim against Alliant for fraud preceding the purchase of the property in August 2007.  This order therefore examines Alliant's potential liability for fraudulent concealment irrespective of Kaiperm's liabilities.

The complaint contains several allegations that Kaiperm and Abrams fraudulently concealed the financial health of Kaiperm at the time of the purchase-and-lease-back agreement. It attempts to pin these allegations on Alliant with the single statement that "Alliant had plans to take over Kaiperm's operations, which included the above-described scheme to avoid any assumption of Lease responsibilities."  The complaint, however, fails to allege: (1) non-disclosure or misrepresentation by Alliant;  or (2) a theory under which Alliant would

10

have a duty to disclose. Given such omissions, this order finds that the complaint fails to state a claim for fraudulent non-disclosure by Alliant under the heightened pleading standard of Rule 9(b). Furthermore, the problem here is not just a failure to allege facts with adequate particularity — the allegations against Alliant are wholly inconsistent with the basic fact pattern. This claim goes to the parties' alleged fraudulent concealment *before* the purchase-and-lease-back agreement in August 2007. Since Alliant did not become involved until several months after the lease agreement, leave to amend would be futile. Alliant's motion to dismiss this claim is thus granted without leave to amend.

### 2. DEFENDANT STANLEY ABRAMS' MOTION.

#### A. Personal Liability.

As a threshold matter, Abrams disputes whether he may be held personally liable for his conduct while acting as the CEO of Kaiperm. Abrams acknowledges that while corporate officers will not be held vicariously liable for torts in which they do not actively participate, of which they have no knowledge, or to which they have not consented, they may be held liable for participating in or authorizing a corporation's torts. *Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 503–04 (1986).

The parties do not dispute the legal standard, but rather the application of that standard to the facts. Abrams may be held personally liable for fraudulent conduct based on his acts and omissions as a corporate officer.

Plaintiff's fraud claims are required to meet the heightened pleading standard under Rule 9(b) as set forth above. Plaintiff and Abrams treat claims four and five jointly. Given the similarity of these claims, this order will do the same.

#### B. Intentional Misrepresentation and Fraudulent Concealment (Claims Four and Five).

In its fourth claim, plaintiff alleges that Abrams intentionally misrepresented Kaiperm's financial condition and intentions in order to induce plaintiff to enter into contract. The elements of an intentional misrepresentation claim are: (1) defendant misrepresents material facts; (2) with knowledge of the falsity of the representations or the duty of disclosure; (3) with intent to defraud or induce reliance; (4) which induces justifiable reliance by the

11

plaintiff; (5) to his or her detriment. *Hahn*, 147 Cal. App. 4th at 748. In order to prevail, the plaintiff must allege and prove that he or she actually relied upon the misrepresentations and, in the absence of fraud, would not have entered into the contract or transaction. *Mega Life & Health Ins. Co. v. Superior Court*, 172 Cal. App. 4th 1522, 1530 (2009). In its fifth claim, plaintiff alleges that Abrams fraudulently concealed material facts in order to induce plaintiff to enter into the purchase-and-lease-back agreement. The elements of fraudulent concealment are listed above. Abrams' motion to dismiss these claims is denied for the following reasons.

Abrams challenges claims four and five with respect to the specificity of their factual allegations, and argues that proof of justifiable reliance would be impossible. This order need not consider Abrams's additional challenge to allegations of intent — plaintiff has satisfied Rule 9(b) by alleging intent generally in its complaint.

Abrams also seeks to invoke the parol evidence rule to bar plaintiff's fraud claim by limply referring to the integration clause of the purchase-and-lease-back agreement. Abrams's argument is stillborn. Evidence of fraud and misrepresentation are well-established exceptions to the parol evidence rule. Evidence extrinsic to the contract is always permissible to prove fraud in the inducement of the contract pursuant to both common and statutory law. The integration clause has no effect in contract actions alleging fraud.

Plaintiff's complaint specifically alleges that, in the months prior to the execution of the purchase-and-lease-back agreement, Abrams affirmatively and falsely represented that Kaiperm was financially sound, that it intended to lease the property for fifteen years, and that NCUA had approved of the transaction (Compl. ¶ 56). Allegedly, Abrams concealed the true facts of the situation: that Kaiperm was financially unsound, mismanaged, and unlikely to uphold its lease obligations, that it engaged in risky investment practices that could jeopardize its liquidity profile, and that it had not obtained NCUA approval for the transaction.

These facts are disputed and readily permit reasonable differences in opinion. Plaintiff has identified a specific defendant, the content of the fraud, and a time frame in which the alleged fraud occurred. The pleadings suffice to give Abrams notice of the content of the claim under Rule 9(b).

Abrams also argues that it would be "impossible" for plaintiff to prove that it justifiably relied on his alleged statements when deciding to enter into the purchase-and-lease-back agreement.

*First*, Abrams argues that even if plaintiff relied on Abrams's statements, such reliance was not justified. Abrams referred to his alleged statements as expressions of opinion, rather than statements of fact, and cited to case law providing that a misrepresentation claim ordinarily cannot be grounded on opinions. This argument is unavailing at the pleading stage. Whether Abrams's statements were or were not expressions of opinion is an issue for the fact finder. Moreover, it is well-settled that "opinions" expressed by persons deemed to have superior knowledge over or special information regarding transactions can form the basis of a misrepresentation claim. *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 431-33 (1945) (*en banc*). It would be a bold leap to classify a CEO's statements regarding the financial health and prospects of his company as matters of mere "opinion" when made in the context of a significant corporate transaction.

*Second*, Abrams argues that plaintiff did not rely on his statements as a matter of law. As the Ninth Circuit explained:

> Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. . . . The question whether a party detrimentally relied on the misrepresentation of another party is properly left to a jury. Except in the *rare case* where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.

*City Solutions v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835, 840 (9th Cir. 2004).

Abrams pointed to the exculpatory clause, section 3.5(b) of the purchase-and-lease-back agreement, to cut short plaintiff's reliance claim. This demonstration is without merit. California decisions consistently have held that liability for intentional torts such as fraud and misrepresentation simply cannot be waived by means of an exculpatory agreement. Such contract provisions neither bar misrepresentation claims nor establish as a matter of law that reliance upon a Abrams's misrepresentations was not justifiable.

13

*McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 793–94 (2008).  Abrams's motion to dismiss claims four and five is accordingly denied.

## CONCLUSION

This order finds that plaintiff's claims of intentional misrepresentation, rescission, breach of lease, breach of contractual warranties, breach of the covenant of good faith and fair dealing, and bad faith denial of the existence of contract (claims four, six, seven, eight, nine, and ten, respectively) are preempted by federal regulation.  For the foregoing reasons, Alliant's motion to dismiss these claims is **GRANTED** without further leave to amend.

In contrast, this order finds that plaintiff's contractual interference claims (claims one through three) are barred neither by federal regulations nor by the First Amendment.  It also finds that plaintiff has stated the necessary facts for relief under Rule 12(b)(6).  For these reasons, Alliant's motion to dismiss claims one through three is **DENIED**.

Plaintiff's fraudulent concealment claim (claim five) against Alliant fails to satisfy the heightened pleading standard of Rule 9(b).  As discussed above, any attempt to reconcile plaintiff's claim with the facts in the pleadings would be futile.  Accordingly, Alliant's motion to dismiss plaintiff's claim of fraudulent concealment (claim five) against Alliant is **GRANTED** without further leave to amend.

Plaintiffs intentional misrepresentation and fraudulent concealment claims (claims four and five) against Abrams state a plausible claim for relief under Rule12(b)(6).  Accordingly, Abrams's motion to dismiss these claims is **DENIED**.

There has been too much motion practice in this case.  It is time to allow discovery.  Apart from the pending motion to join NCUA as a necessary party (scheduled to be heard in August), please do not bring any more merits motions until the completion of discovery.

**IT IS SO ORDERED.**

Dated: June 25, 2009

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14