IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

625 3RD STREET ASSOCIATES, LP,
a California limited partnership,

    Plaintiff,

  v.

ALLIANT CREDIT UNION, an Illinois corporation, STANLEY ABRAMS, an individual, and DOES 1 through 15, inclusive,

    Defendants.
                                /

No. C 09-00564 WHA

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

## INTRODUCTION

This action involves a dispute over a real-estate purchase-and-lease-back agreement. Plaintiff now moves to amend its complaint. The proposed amended complaint would add two new claims and amend the already-existing claims. As to the addition of claims six and seven against defendant Alliant, plaintiff's motion is **DENIED**. As to the proposed amendments to claims one through three against Alliant and claims four and five against defendant Abrams, plaintiff's motion is **GRANTED**.

## STATEMENT

This case arises from Kaiperm Federal Credit Union's alleged breach of a purchase-and-lease-back agreement with plaintiff 625 3rd Street Associates, LP. The office

space was for the credit union's store. Approximately one year after entering the lease agreement, Kaiperm ceased paying rent under the lease when the National Credit Union Administration initiated an involuntary liquidation of Kaiperm. This case involves a dispute over who, if anyone, is liable under the lease agreement.

Plaintiff is in the real-estate business. In May 2007, plaintiff executed a letter of intent to purchase an eight-million dollar Oakland property from Kaiperm in exchange for Kaiperm's execution of a fifteen-year lease on the property to commence upon the close of escrow. Plaintiff performed due diligence to review Kaiperm's publicly available financials. All seemed sunny. Plaintiff felt Kaiperm was adequately capitalized and financially stable.

Between May 2007 and August 2007, Kaiperm and its CEO, defendant Stanley Abrams, allegedly informed plaintiff that Kaiperm was in good financial standing, that the publicly available on-line financial statements were accurate, that Kaiperm had the wherewithal to perform on the lease agreement, and that the eight-million dollar purchase price to be paid by plaintiff to Kaiperm was to be used to improve Kaiperm's liquidity. All this was untrue, or so it is alleged.

The purchase-and-lease-back agreement was then finalized. Kaiperm became the tenant. A few months later, Alliant entered the picture. It allegedly became the exclusive managing agent of Kaiperm's business and operations. During this period, Alliant purportedly abandoned an existing financial plan aimed at ensuring Kaiperm's long-term stability. Instead, Alliant initiated a plan of operation designed to make Kaiperm insolvent, thereby compelling the NCUA to intervene, all pursuant to a plot to use the NCUA's statutory power to repudiate the rent obligations.

In May 2008, plaintiff was told that Kaiperm was in financial trouble, that Alliant would be merging with it, and that Alliant wished to negotiate a deal regarding the remaining lease obligations. Soon thereafter, Alliant informed plaintiff that all subsequent dealings should be made solely with Alliant. Plaintiff alleges that Kaiperm's board of directors delegated its oversight functions and responsibilities to Alliant's representatives at that time. In August 2008, after plaintiff and Alliant were unable to negotiate an agreement on a buy-out price for the lease,

1  Alliant informed the NCUA that it would not merge with Kaiperm unless the NCUA placed
2  Kaiperm in liquidation and excused any remaining obligations under the lease.
3  　　　　On September 26, 2008, the NCUA placed Kaiperm in involuntary liquidation and
4  executed a purchase-and-assumption agreement by which Alliant was given Kaiperm's business
5  and assets and liabilities, with the exception of the lease. On October 23, 2008, the NCUA
6  notified plaintiff that it was repudiating any remaining lease obligations under the
7  purchase-and-lease-back-agreement. In plaintiff's view, it has been the victim of a plot to
8  unload the property, to extract eight-million dollars from plaintiff, and then to extinguish the
9  stream of rent payments via the neat trick of NCUA repudiation.
10 　　　　Plaintiff filed this lawsuit in Alameda County Superior Court on December 30, 2008,
11 against defendants Alliant and Abrams. The original complaint asserted ten state-law claims
12 for breach of contract and business torts. Alliant removed the case to federal court, and a motion
13 to remand was denied. Upon defendants' motions, an order issued on June 25, 2009, granting
14 dismissal of seven of the ten claims against Alliant but denying Alliant's motion to dismiss claims
15 one through three. The order also denied Abrams' motion to dismiss the two claims against him.
16 There are currently three claims remaining against defendant Alliant and two against defendant
17 Abrams (Dkt. No. 81).[1]
18 　　　　Since filing this action, plaintiff has filed an additional action against the NCUA and
19 Kaiperm (No. C-09-03820). That case was recently deemed related to the instant action and
20 re-assigned to the undersigned judge (Dkt. No. 102).
21 　　　　Plaintiff now moves to file a first amended complaint. The new complaint would add
22 two claims against Alliant: one for "successor corporation liability on contract through statutory
23 merger," and another for "breach of contract (to third party beneficiary)." The complaint would
24 also serve to correct "factual allegations common to all claims, [add] more particulars to the
25 fraud allegations against Mr. Abrams and [modify, add, or delete] allegations where necessary
26 to conform to evidence obtained in discovery" (Br. 9).

---

[1] The remaining claims against Alliant are: (1) interference with contractual relations; (2) inducement to breach contract; and (3) interference with prospective economic gain. The remaining claims against Abrams are: (1) intentional misrepresentation; and (2) fraudulent concealment.

3

**ANALYSIS**

Federal Rule of Civil Procedure 15(a) states that after a response to the complaint has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a) applies until the expiration of a court-established deadline for filing motions for leave to amend. That deadline herein was September 3, 2009 (Dkt. No. 67). Plaintiff's motion was timely filed. Granting leave to amend:

> [L]ies within the sound discretion of the trial court . . . In exercising its discretion a court must be guided by the underlying purpose of Rule 15 — to facilitate decision on the merits rather than on the pleadings or technicalities . . . Thus, [R]ule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185–86 (9th Cir. 1987) (citations and quotations omitted). Nevertheless, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Rather, the district court may in its discretion deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In assessing these factors, all inferences should be made in favor of granting the motion. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

**1.     NEW CLAIMS AGAINST ALLIANT.**

"[L]eave to amend need not be granted when an amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002). In determining whether allowing leave to amend would be futile, courts may properly consider facts and evidence beyond the allegations. *See, e.g.*, *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). Alliant asserts that plaintiff's proposed new claims are futile for two reasons: (i) they are preempted; and (ii) they have no factual or legal basis and thus fail to state a cognizable claim for relief.

4

### A. Claim Six — Successor Corporation Liability on Contract Based on Statutory Merger.

Six of the ten original claims in the complaint were based on plaintiff's theory that a de facto merger had been completed between Alliant and Kaiperm. Plaintiff claimed that the two credit unions had merged prior to NCUA's liquidation of Kaiperm, and therefore Alliant was the successor to Kaiperm and the NCUA lacked authority to liquidate Kaiperm and repudiate its lease with plaintiff. These claims were dismissed (Dkt. No. 81 at 5) (emphasis added):

> In the present case, claims four and six to ten necessarily challenge the NCUA's express repudiation of the lease by seeking to keep the lease alive through a state-law de facto merger. In addition, no merger is valid, de facto or otherwise, *unless pre-approved by the NCUA*. 12 C.F.R. 708b.101(b). This is a two-fold direct conflict with federal law and is barred by federal preemption.

In adding claim six, plaintiff now asserts what are "essentially the same liabilities originally alleged in the claims previously dismissed by the Court, but instead of being premised on de facto merger doctrine, are premised on the occurrence of a statutory merger" (Br. 2).

Federal law requires that "[a] federally-insured credit union must have the prior written approval of the NCUA before merging with any other credit union." 12 C.F.R. 708b.101(b). This regulation is dispositive here. Plaintiff has presented no evidence or allegation that such approval took place. Plaintiff asserts that "substantial evidence has been produced upon which a finder of fact may reasonably conclude that a statutory merger was completed prior to the initiation of liquidation proceedings" (Reply Br. 1). But it is impossible to find that a merger took place without finding that the *NCUA actually approved the merger* — a proposition that is unsupported by plaintiff and directly contradicted by NCUA documents demonstrating that Kaiperm was liquidated, not merged into anyone (Alliant Opp. Exhs. A, B). Plaintiff's unsupported claim does no more than "plead[] facts that are merely consistent with a defendant's liability [—] it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Claim six for successor liability, despite plaintiff's new theory of statutory merger, would be dismissed upon Alliant's motion, and allowing its addition here would therefore be futile.

5

### B.     Claim Seven — Breach of Management Agreement.

Alliant contends that futility should also prevent plaintiff from adding claim seven for breach of management agreement. Alliant's argument is two-fold. *First*, Alliant asserts that plaintiff was not a third-party beneficiary of the agreement between Alliant and Kaiperm, and consequently that plaintiff may not recover for an alleged breach of the agreement. *Second*, Alliant asserts that plaintiff may not recover here because it was not Alliant that repudiated plaintiff's lease — it was the NCUA. Because this order agrees with Alliant's first point, we need not reach the second.

Plaintiff alleges that the management agreement between Alliant and Kaiperm consisted of two documents; a "Management and Consulting Agreement," and a "Supplemental Merger Agreement" (Alliant Opp. Exhs. D and H, respectively). Both documents contain forum-selection clauses indicating that the agreement as a whole shall be interpreted and enforced under Illinois law. As Alliant's opposition correctly asserts, plaintiff is not a third-party beneficiary under either Illinois or California law, so this order need not address the validity of the forum-selection clauses.

Alliant cites numerous Illinois and California decisions supporting its argument that plaintiff is *not* a third-party beneficiary to the agreement. Under Illinois law, "there is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties. In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be *practically an express declaration*." *Ball Corp. v. Bohlin Bldg. Corp.*, 187 Ill. App. 3d 175, 177 (App. Ct. 1989) (emphasis added). In California, "a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary." *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (Ct. App. 2005) (quotations omitted); Cal. Civ. Code § 1559.

Here, neither agreement makes "an express declaration" that it is intended to benefit plaintiff, and neither contains language to the effect that it was made "expressly for [plaintiff's]

6

benefit." Indeed, the two agreements do not mention plaintiff or the lease, and they give no hint that they are intended to benefit any party other than Alliant and Kaiperm.

In order for plaintiff to recover as a third-party beneficiary under either Illinois or California law, it would have to show — at the very least, *some* — evidence that the parties to the agreement intended for the agreement to benefit plaintiff. Plaintiff's assertion that it was a third-party beneficiary to this agreement is nothing more than plaintiff's own legal conclusion, wholly unsupported by any facts.

Because neither claim six nor seven would survive a motion to dismiss, allowing their addition through amendment would be futile. Accordingly, as to the addition of claims six and seven against Alliant, plaintiff's motion to amend is **DENIED**.

### 2. AMENDED CLAIMS AGAINST ALLIANT.

Plaintiff seeks to amend its three contractual interference claims against Alliant (interference with contractual relations, inducement to breach contract, and interference with prospective economic advantage). Alliant argues that it was acting as Kaiperm's agent in the months leading up to the liquidation, and therefore these three claims are legally barred because "an agent to a party to a contract cannot be held liable for interference with that contract" (Alliant Opp. 14.). Alliant requests not only that this order deny leave to amend these three claims, but also that the Court reconsider its order of June 25, 2009, and dismiss the original claims on the ground that they are deficient as a matter of law.

Plaintiff asserts that the amended claims are "essentially the same" as claims one through three of the original complaint. This order agrees. Alliant's arguments here all go towards reconsideration of the order of June 25, 2009. Alliant fails to adequately distinguish the proposed amended claims from the original claims — claims that this Court has previously found sufficient to state plausible grounds for relief. Because Alliant has not asked for nor received leave to file a motion for reconsideration as required under Civil Local Rule 7-9, its request for reconsideration in the midst of its opposition here is improper.

1    Alliant has failed to demonstrate any reason for this order to stray from the general rule
2 that amendments should be "freely" allowed under Rule 15(a).  Accordingly, as to the
3 amendments plaintiff seeks to make to claims one through three, plaintiff's motion is **GRANTED**.

4    **3.    AMENDED CLAIMS AGAINST ABRAMS.**

5    Plaintiff does not seek to add any new claims against Abrams.  Rather, as even Abrams
6 states in his opposition, the proposed amendments seek only to "add factual allegations" in
7 support of the already-existing claims (Abrams Opp. 3).  Abrams does not argue that these
8 amendments would prejudice him, nor that they are sought in bad faith or following undue delay.
9 Abrams contends only that the proposed amendments are futile, because they are factual
10 allegations that cannot be proven, and even if proven would not support plaintiff's claims.

11    Yes, when each allegation is taken alone, the allegations that plaintiff seeks to add here do
12 not demonstrate Abrams' potential liability to plaintiff.  But these allegations do not stand alone,
13 they are merely factual support for plaintiff's two claims against Abrams.  Contrary to Abrams,
14 the addition of these allegations would not be futile.

15    The decisions on which Abrams relies are distinguishable in that they deal with
16 amendments that seek to add *claims and parties* to the complaint.  Here, as already stated,
17 plaintiff seeks to add only factual allegations in support of already-existing claims.

18    If the factual allegations added here lack merit or do not support plaintiff's claims,
19 Abrams will be able to demonstrate as much at trial or on summary judgment.  But Abrams has
20 not given this order any reason to stray from the general rule that amendments should be "freely"
21 allowed under Rule 15(a).  Accordingly, as to the amendments plaintiff seeks to make to claims
22 four and five, plaintiff's motion is **GRANTED**.

### CONCLUSION

24    For the above reasons, plaintiff's motion for leave to file a first amended complaint is
25 **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff may amend the already-existing claims, but
26 may not add claims six and seven.  Plaintiff's amended complaint must conform to the
27 requirements of this order, and must be filed and served by **NOVEMBER 5, 2009**.  The answers
28 must be filed and served within twenty days thereafter.  Counsel are requested to cease their

8

motion practice and to prepare for trial, asserting on summary judgment only the questions that have a clear-cut basis for disposition.

**IT IS SO ORDERED.**

Dated: October 26, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE