IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 625 3RD STREET ASSOCIATES, L.P., a California limited partnership,<br><br>    Plaintiff,<br><br>  v.<br><br>BOARD OF THE NATIONAL CREDIT UNION ADMINISTRATION, in its capacity as liquidating agent for the Kaiperm Federal Credit Union, KAIPERM FEDERAL CREDIT UNION, a federal credit union, and STANLEY ABRAMS, an individual,<br><br>    Defendants.<br>                                                                                                                            / | No. C 09-00564 WHA<br>No. C 09-03820 WHA |

**CHARGE TO THE JURY**

1.

It is your duty to decide this case and to find the facts from all the evidence presented in the case. To those facts you must apply the law as I now give it to you. Copies of these instructions will be available in the jury room for you to consult as necessary. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the Court may have said or done as suggesting what verdict you should return — that is a matter entirely up to you.

2.

The evidence from which you are to decide what the facts are consists of:

1. The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2. The exhibits which have been received into evidence;

3. The sworn testimony of witnesses in depositions read into evidence;

4. The interrogatory questions and answers that were read into evidence; and

5. The stipulations that were read into evidence.

3.

Certain things are not evidence and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments, statements and objections by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

  2. A suggestion in a question by counsel or the Court is not evidence unless it is adopted by the answer. A question by itself is not evidence. Consider it only to the extent it is adopted by the answer.

  3. Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered. Demonstrative charts and diagrams were shown to you but are not evidence (unless admitted into evidence).

  4. Anything you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

4.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience and common sense. You should consider both kinds of evidence. It is for you to decide how much weight to give to any evidence.

5.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says or part of it or none of it. In considering the testimony of any witness, you may take into account:

  1. The opportunity and ability of the witness to see or hear or know the things testified to;

  2. The witness's memory;

  3. The witness's manner while testifying;

3

4. The witness's interest in the outcome of the case and any bias or prejudice;

5. Whether other evidence contradicted the witness's testimony;

6. The reasonableness of the witness's testimony in light of all the evidence; and

7. Any other factors that bear on believability.

6.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. Nor does it depend on which side called the witnesses or produced evidence.

7.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or to do something, that is inconsistent with the witness's present testimony. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

8.

Discrepancies in a witness's testimony or between a witness's testimony and that of other witnesses do not necessarily mean that such witness should be discredited. Inability to recall is common. Innocent misrecollection is not uncommon. Two persons witnessing an incident or a transaction sometimes will see or hear it differently. Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness willfully false in one part of his or her testimony is to be distrusted in others. You may reject the entire testimony of a witness who willfully has testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors his or her testimony in other particulars.

9.

You have heard testimony from witnesses referred to as "expert witnesses." These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion and all the other evidence in the case. If an expert witness was not present at the events in question, his or her opinion is necessarily based on an assumed set of circumstances. In evaluating the opinion during the trial, you should take into account the extent to which you do agree or do not agree with the circumstances assumed by the expert witness.

10.

In these instructions, I will often refer to the burden of proof. The burden of proof in this case is known as a burden of proof by a preponderance of the evidence. When a party has the burden of proof on any issue by a preponderance of the evidence, it means you must be persuaded by the evidence that the issue is more probably true than not true. To put it differently, if you were to put the evidence favoring Party No. 1 and the evidence favoring Party No. 2 on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side. If the party fails to meet this burden, then the party with the burden of proof loses on that issue. Preponderance of the evidence basically means "more likely than not."

11.

On any claim, if you find that plaintiff carried its burden of proof as to each element of a particular claim, your verdict should be for plaintiff on that claim. If you find that plaintiff did not carry its burden of proof as to each element, you must find against plaintiff on that claim.

12.

This case arises out of the sale and leaseback agreements made in 2007. In the sale, Kaiperm sold the credit union building to plaintiff for eight million dollars. In the leaseback, Kaiperm committed to lease the building back for at least 15 years for at least $40,000 per month, plus some upwards adjustments. Approximately one year later, Kaiperm ceased all payments

after Kaiperm was taken over by the NCUA and the NCUA repudiated the lease pursuant to statutory authority. No money was returned to plaintiff. In this case, plaintiff contends that Kaiperm was in worse condition than defendants had represented to plaintiff, that defendants concealed the truth in order to induce plaintiff to close the deal, and that defendants wrongly represented that the transaction had been approved by the NCUA. Defendants deny any fraud or breach of warranty and contend that Kaiperm accurately disclosed its condition to plaintiff.

13.

Defendant Board of the National Credit Union Administration is the liquidating agent for Kaiperm Federal Credit Union. It has stepped into the shoes of Kaiperm and is liable for any liabilities of Kaiperm to plaintiff. The liquidating agent will be referred to as "Kaiperm" for the rest of these instructions and on the verdict form for simplicity.

14.

These instructions often refer to "defendants" or "defendant" rather than Kaiperm or Stanley Abrams individually. Regardless, you may find that one is liable for certain claims that the other is not liable for, or that both or neither are liable. The same standards apply to both defendants. If you find Abrams liable for fraud, then you must find Kaiperm liable as well for fraud.

15.

There is a circumstance in this case that simplifies our work in this trial. There can be no liability for rent payments after the repudiation of the lease by the NCUA. That is because the NCUA was authorized by law to make such repudiations on behalf of any credit union taken over by the NCUA, as happened here. All rent payments were made up to the date of the repudiation. None were made or required afterward. This circumstance reduces your work to deciding the extent to which, if at all, any liability and/or damages resulted from the sale-and-leaseback transaction as of the date of that transaction, namely August 31, 2007. On this point, let's now turn to the specific claims asserted by plaintiff.

6

16.

First, in connection with the sale and leaseback, plaintiff claims that Kaiperm and Stanley Abrams committed fraud by making a false representation to plaintiff. To establish this claim, 625 3rd Street must prove all of the following:

1. That, in connection with the sale and leaseback, defendant made an affirmative representation of an important fact to plaintiff;
2. That the representation was false;
3. That defendant knew that the representation was false when it was made, or that it was made recklessly without regard for its truth;
4. That defendant intended that plaintiff rely on the representation;
5. That plaintiff was unaware of the falsity of the representation and reasonably relied on the representation;
6. That plaintiff was harmed; and
7. That plaintiff's reliance on defendant's representation was a substantial factor in causing its harm.

An intention to induce reliance on a false representation means that a defendant had knowledge that the representation was false or had no reasonable grounds to believe it was true, and that said defendant intended to induce plaintiff to alter its position to its injury or risk.

17.

There is a second way that fraud can be committed and that involves concealment of facts. This also alleged by plaintiff. That is, plaintiff also claims that Kaiperm and Stanley Abrams committed fraud by concealing certain information from plaintiff. To establish fraud by concealment, plaintiff must prove all of the following:

1. That defendant made a material statement or representation but intentionally failed to disclose other important facts necessary to make the statement or representation made not misleading; or concealed an important fact known or accessible only to defendant and known by

     defendant to be unknown to plaintiff and not reasonably discoverable by plaintiff;

2. That plaintiff did not know of the concealed fact;
3. That defendant intended to deceive plaintiff by concealing the fact;
4. That plaintiff reasonably relied on defendant's deception;
5. That plaintiff was harmed; and
6. That defendant's concealment was a substantial factor in causing plaintiff's harm.

18.

So the law allows plaintiff to attempt to prove fraud in two ways, one being based on one or more affirmative false statements and the other theory being based on a concealment of one or more facts. Plaintiff need not prove both but it must prove at least one such theory to establish its fraud claim. You must agree unanimously on at least one particular misrepresentation or concealment made by a defendant to find fraud. You must also agree unanimously on whether any fraud was oral or written or both.

19.

As the required elements of proof show, to prove either type of fraud, plaintiff must establish reasonable reliance upon the representation or concealment. Under the preponderance of the evidence standard of proof, plaintiff must prove that in all reasonable probability that without the representation or concealment plaintiff would not have entered into the transaction. The fraud, if any, need not be the sole cause if it appears that reliance upon the representation substantially influenced its action, even though other influences operated as well.

With respect to the alleged concealment, one way to look at the issue of reasonable reliance is to ask whether the information not provided to plaintiff was so much worse than the information obtained by plaintiff that it would have declined to do the transaction or would have done so only on significantly different terms. If so, then plaintiff may be said to have reasonably relied to its detriment on incomplete information. If not, then plaintiff did not reasonably rely to its detriment on incomplete information.

8

You must determine the reasonableness of plaintiff's reliance by taking into account the intelligence, knowledge, and experience of the individuals who were acting on its behalf. You must also find all other elements of the claim, not just reasonable reliance, of course, to find fraud.

20.

Remember, as I said to you near the outset of trial, there is no defense of contributory or comparative negligence to a fraud claim. Put differently, those who commit fraud cannot escape by claiming the victim was too trusting and should have done more investigation or was somehow negligent. Nonetheless, plaintiff must prove that it reasonably relied on the alleged misrepresentations or concealments.

21.

You have heard or seen evidence that certain NCUA records were not supposed to be disclosed without the consent of the NCUA. At the time in question, a NCUA regulation provided:

> No officer, employee, or agent of NCUA or of any federally-insured credit union shall disclose or permit the disclosure of any exempt records of NCUA to any person other than those NCUA or credit union officers, employees, or agents.

I will now explain some points of law relevant to this regulation and how they fit into our case.

*First*, the regulation barred only disclosure of the NCUA records themselves, not the information contained therein or the fact that the records existed or the general subject of the records.

*Second*, with the consent of the NCUA, even the NCUA records themselves could have been shown to parties with legitimate need to know their contents.

*Third*, Kaiperm and its representatives were obligated, if they made representations of fact to plaintiff, to disclose all information known to them necessary to make their representations not misleading in any material way. Put differently, when one speaks, he or she must speak the whole truth, and not conceal any facts which materially qualify those stated. The telling of a half-truth calculated to deceive is fraud. It is for you to decide whether or not there were any half-truths.

9

22.

Defendant Abrams may be held liable for fraud in which he participated for his own personal benefit. Defendant Abrams can also be held liable for fraud if the fraud was carried out by other Kaiperm employees or representatives and he authorized or directed the fraudulent acts but not otherwise.

23.

Now, I will turn to the second and final claim of liability asserted by plaintiff and this claim can only be asserted against Kaiperm. It is for breach of express contract warranty. 625 3rd Street claims that Kaiperm breached the express warranties in the contract at issue in this case. To recover damages from Kaiperm for breach of the contract's warranties, 625 3rd Street must prove all of the following:

1. That plaintiff and Kaiperm entered into a contract;
2. That plaintiff did all, or substantially all, of the significant things that the contract required it to do;
3. That one or more written warranties in the contract was inaccurate as of the close of escrow; and
4. That plaintiff was harmed by the breach of that warranty or those warranties.

24.

The first two of the elements have been proven. What are disputed are the last two, namely, whether one or more written warranties in the contract was inaccurate as of the close of escrow, and whether plaintiff was harmed by the breach of that warranty or those warranties.

25.

The repudiation of the lease between Kaiperm and 625 3rd Street by the Liquidating Agent of the NCUA did not constitute a breach of warranty. The lease repudiation was done by the NCUA pursuant to federal statute. No liability can flow from this action.

26.

Keep in mind that an express warranty in a contract is different from a promise in the contract. For example, if you promise to pay rent under a lease, you breach the lease if you fail to pay rent. But that is not an issue in this case because the NCUA was allowed to repudiate the lease. A warranty is different. When a party makes a contractual warranty, the party is saying that those things are true statements that can be counted on as of the closing. If those statements turn out to be untrue, then the party who made the warranty has breached its warranty. Fraud does not have to be proven. A breach of warranty remains a breach of warranty even if the mistake is entirely innocent, for the whole point of a contractual warranty is to place the risk of error on the party making the representation.

27.

Now, I will instruct you on the subject of damages, which you will have to decide if you find plaintiff has proven liability. By instructing you on damages, as I will now do, I do not mean to suggest how you should decide on liability.

28.

For fraud, plaintiff may recover the difference, if any proven, between the eight million paid and the actual value of that which was received at the time of the closing and any out-of-pocket expenses, if proven, that occurred on closing the transaction and in evaluating whether or not to close the transaction.

The actual value of that which was received was the actual market value of the transaction in the marketplace, not the subjective value to plaintiff. Put differently, if you find that false statements were made or material facts were concealed, then you should determine what the deal would have been worth in the marketplace had the truth about any fraudulent statements or concealments been known to a buyer. This would then be deducted from the eight million to arrive at damages. Again, you must focus on the time of the deal. That is, you must determine the actual market value at the time of the deal. Plaintiff has the burden to prove the deception and the amount of damages. Approximations may be used but speculation may not be used.

29.

If you reach the question of damages, there is an important difference you must keep in mind. As I have stated, you may not award damages merely because, as we all now know after the fact, rent payments ceased one year into the lease. That would be an after-the-fact analysis. You may, however, award damages based on a *before-the-fact* assessment, namely, if fraud has been proven, how the true risk of future nonpayment of rent by Kaiperm would have lowered the actual market value of the deal — as measured and evaluated *at the time of the deal*. For example, if the true risk of future nonpayment, as measured at the time of the deal, would have reduced the then actual market value of the obligation, then that reduction would be recoverable as damages.

30.

When you determine what the property's price in the marketplace would have been at the time of the deal had the truth about any fraudulent statements or concealments been known to a buyer, you should determine the highest price for which the property would have sold if the seller and buyer were negotiating at arms' length. This means the buyer and seller would not be related and would have roughly equal bargaining power. The buyer and seller would have both been ready, willing, and able to do the deal but not forced to do so. The seller would have had a reasonable time to sell, and the buyer would have had a reasonable time and full opportunity to investigate and determine the condition of the property.

31.

Now I will explain the measure of damages for breach of contractual warranty. If you decide that 625 3rd Street has proved its claim against Kaiperm for breach of a warranty in the contract, plaintiff is entitled to recover as damages the amount necessary to compensate plaintiff for the warranted fact turning out to be untrue, limited to any and all harm that was reasonably foreseeable at the time of the deal for such breach. Plaintiff has the burden of proof as to the amount of damages. Again, approximations may be used but speculation may not be used.

32.

You have heard evidence regarding efforts to lease the vacant building at issue in this case to mitigate the damage from the repudiation. This evidence is related to an issue you do not have to decide. In other words, because you may not consider that the lease was repudiated in determining damages, there will be no damages awarded based on lost rent after the repudiation. So it doesn't matter whether plaintiff could have received rent by leasing the vacant building but has not.

33.

Plaintiff has made claims against defendant Kaiperm for both fraud and breach of warranties. If you decide that 625 3rd Street has proven both claims against Kaiperm, you will be asked to eliminate any double-counting of damage items as between the two claims. The verdict form will guide you on this point.

34.

When you begin your deliberations, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court. I recommend that you select a foreperson who will be good at leading a fair and balanced discussion of the evidence and the issues.

35.

In your deliberations it is usually a mistake to take a straw vote early on. This is due to the risk of jury members expressing a premature opinion and then, out of pride, digging their heels. Rather, it is usually better to discuss the evidence, pro and con, on the various issues before proceeding to take even a straw vote. In this way, all the viewpoints will be on the table before anyone expresses a vote. These are merely recommendations, however, and it is up to you to decide on how you wish to deliberate.

36.

Your verdict as to each claim and as to damages, if any, must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

37.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

38.

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

39.

When you retire to the jury room to deliberate, the Clerk will bring you the following:

1. All of the exhibits received into evidence;
2. An index of the exhibits;
3. A work copy of these jury instructions for each of you;
4. A work copy of the verdict form for each of you; and
5. An official verdict form.

You do not have to discuss the questions in the strict sequence indicated in the special verdict form, but you must, by the end, answer them unanimously as indicated in the form.

When you recess at the end of a day, please place your work materials in the brown envelope provided and cover up any easels containing your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

40.

A United States Marshal will be outside the jury-room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you

1  send out a question, I will consult with the lawyers before answering it, which may take some
2  time. You may continue your deliberations while waiting for the answer to any question.
3  Remember that you are not to tell anyone — including me — how the jury stands, numerically or
4  otherwise, until after you have reached a unanimous verdict or have been discharged. Do not
5  disclose any vote count in any note to the Court.

41.

7  You have been required to be here each day from 7:45 a.m. to 1:00 p.m. Now that you
8  are going to begin your deliberations, however, you are free to modify this schedule within
9  reason. For example, if you wish to continue deliberating in the afternoons after a reasonable
10 lunch break, that is fine. The Court does, however, recommend that you continue to start your
11 deliberations by 8:00 a.m.

12 It is very important that you let the Clerk know in advance what hours you will be
13 deliberating so that the lawyers may be present in the courthouse at all times the jury is
14 deliberating.

42.

16 You may only deliberate when all of you are together. This means, for instance, that in
17 the mornings before everyone has arrived, or when someone steps out of the jury room to go to
18 the restroom, you may not discuss the case. As well, the admonition that you are not to speak to
19 anyone outside the jury room about this case still applies during your deliberation.

43.

21 After you have reached a unanimous agreement on a verdict, your foreperson will fill
22 in, date and sign the verdict form and advise the Court through the marshal that you have reached
23 a verdict. The foreperson should hold on to the filled-in verdict form and bring it into the
24 courtroom when the jury returns the verdict. Thank you for your careful attention. The case is
25 now in your hands. You may now retire to the jury room and begin your deliberations.

27 Dated: October 6, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE