IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 625 3RD STREET ASSOCIATES, L.P., a California limited partnership, | No. C 09-00564 WHA<br>No. C 09-03820 WHA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION REGARDING JURY INSTRUCTIONS** |
| BOARD OF THE NATIONAL CREDIT UNION ADMINISTRATION, in its capacity as liquidating agent for the Kaiperm Federal Credit Union, KAIPERM FEDERAL CREDIT UNION, a federal credit union, and STANLEY ABRAMS, an individual, | |
| Defendants. / | |

This memorandum opinion explains certain decisions of the Court in framing the final jury instructions in these consolidated actions.

**1.    DAMAGES INSTRUCTIONS**

Jury instructions 28–30 were created based on California Civil Code Section 3343 and case law interpreting it, and adapted to the evidence presented at trial. Pursuant to Section 3343, in calculating the damage award for any fraud proven, all the jury was permitted to consider was the difference between the eight million dollar sale price and the actual worth of the deal received by plaintiff at the time of sale. The jury was not allowed to award missed rent payments subsequent to NCUA repudiation. There are two reasons why this is so:

*First*, the federal repudiation statute allowed repudiation of the lease, so there was nothing improper about the fact that subsequent to the repudiation the NCUA as liquidating

agent of Kaiperm did not pay plaintiff under the lease that was properly repudiated. 12 U.S.C. 1787(c).

*Second*, under state law, it would be double-counting to allow damages for lost rent when that anticipated payment stream was already factored into the allowable damage calculation. If the difference between the contract price and that which was received at the time of the contract was the value of the anticipated rent payments over 15 years, the out-of-pocket loss measure for damages would account for the reduction in value of the future stream of rent payments as of the date of the deal. Plaintiff contended that California Civil Code Section 3343 allowed for lost profits as "additional damage arising from the [] transaction." But the trial record contains no evidence of damages from additional lost profits other than failure to pay rent and building maintenance fees, which were both anticipated at the time of the contract and incorporated into the contract price. Although the law of California allows recovery of lost profits, it only does so to the extent of additional losses, *i.e.* losses not already accounted for by out-of-pocket loss recovery. *See Croeni v. Goldstein*, 21 Cal. App. 4th 754, 759–60 (1994).

*Third*, no instruction on mitigation of damages was given because no recovery for lost rent was allowed. If the only recovery for damages is to be measured as of the time of contract formation, there was no way to mitigate damages measured by out-of-pocket loss.

**2.    NO INSTRUCTION ON THE *D'OENCH DUHME* DOCTRINE**

No instruction was given concerning the *D'Oench Duhme* doctrine. This doctrine was asserted as an affirmative defense by defendant NCUA in a motion for summary judgment (*see* Dkt. No. 139). The motion was denied without prejudice to NCUA bringing a motion for judgment as a matter of law on the same basis, "after all the evidence has been heard at trial and the application of the *D'Oench, Duhme* doctrine in this somewhat unusual circumstance may be better evaluated." Subsequently, both defendants and plaintiff asserted a proposed jury instruction on the doctrine, though plaintiff's was "conditional" because it argued the NCUA cannot assert this defense at all (Dkt. Nos. 169 at 17–18; 168 at 11–23; and 172 at 13–16). But defendant NCUA wanted this defense to go to the jury as an affirmative defense.

Defendants were confused. Though they stated that the defense is a matter of law, which it is, they at the same time construed the language of the order denying NCUA's motion for summary judgment as an invitation to give this legal issue to the jury. The point of stating that "the application of the *D'Oench, Duhme* doctrine in this somewhat unusual circumstance may be better evaluated" after trial was precisely that this is a somewhat unusual circumstance for application of the doctrine. The order explained why. It was not an invitation to give a legal issue to the jury. If defendant NCUA files a post-verdict motion for judgment as a matter of law, there will be more context for consideration of application of the doctrine, that is all.

At the charging conference, however, defendant NCUA narrowed what it wanted to charge the jury on with respect to the *D'Oench Duhme* defense to a special interrogatory. As to plaintiff's fraud claim, defendant wanted to ask the jury, if it found that Kaiperm committed fraud, whether the misrepresentations or concealments were oral or written or both. This affects the assertion of the affirmative defense because if the jury finds fraud but the misrepresentations or concealments on which fraud was based were never in writing, the *D'Oench Duhme* defense would be successful if as a matter of law it applies in this context. Whether it applies in this context is another issue, and one which may be raised in a Rule 50 motion after the verdict. The solution was therefore that defendant NCUA was not permitted to ask the jury to make a legal determination on the application of *D'Oench Duhme*, but that a special interrogatory was asked, in case the resulting jury finding is needed later.

Dated:   October 7, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE