1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9
10   625 3RD STREET ASSOCIATES, L.P., a California
     limited partnership,
11                                                  No. C 09-00564 WHA
                   Plaintiff,                       No. C 09-03820 WHA
12
13        v.

14   BOARD OF THE NATIONAL CREDIT UNION            **ORDER DENYING MOTION**
     ADMINISTRATION, in its capacity as liquidating **TO AMEND JUDGMENT**
15   agent for the Kaiperm Federal Credit Union,    **TO AWARD RESCISSION**
     KAIPERM FEDERAL CREDIT UNION, a federal
16   credit union, and STANLEY ABRAMS, an individual,

17                 Defendants.
                                                    /
18   _____

19                            **INTRODUCTION**

20        In this real-estate fraud action, plaintiff moves under Rule 59(e) to amend the judgment

21   and for rescission in lieu of money damages.  For the reasons below, plaintiff's motion is

22   **DENIED.**

23                             **STATEMENT**

24        Plaintiff 625 3rd Street Associates is an investor group.  In 2007 it purchased the Oakland

25   headquarters of defendant Kaiperm Federal Credit Union.  Defendant Stanley Abrams was then

26   Kaiperm's CEO.  Plaintiff paid Kaiperm eight million dollars and Kaiperm agreed to lease the

27   bank building back for the next fifteen years.

28        At the time of the deal, Kaiperm was struggling financially.  In the year after the sale and

     leaseback, defendant Board of the National Credit Union Administration placed Kaiperm in

**United States District Court**
For the Northern District of California

involuntary liquidation due to insolvency.  Using its special enforcement powers in 12 U.S.C. 1787(c)(1), the NCUA repudiated the lease with plaintiff.  In other words, Kaiperm kept the eight million dollars but escaped from the lease.  In better times, the building could perhaps have been re-let, but by the time of the repudiation, the hot real estate market had turned cold.  Plaintiff then brought this action, alleging that Kaiperm and Abrams had breached a warranty and fraudulently induced the sale-leaseback transaction in the first place.

At trial, plaintiff asked for $10.1 million in its opening statement, but then asserted varied and lesser figures throughout the trial.  During its closing argument, plaintiff asked the jury for $4.49 million.  The jury rejected the warranty claim.  The jury, however, found fraud and awarded plaintiff $630,000.  Judgment was entered.

Now plaintiff seeks to amend the judgment and obtain rescission of the original transaction in lieu of the disappointing verdict.  Specifically, plaintiff seeks to convey title to the Oakland property to the NCUA and return $564,623.00 in rent it collected from Kaiperm to the NCUA; in return, plaintiff seeks $11.3 million.  This figure includes the purchase price of the real estate and closing costs ($8,189,558.27), prejudgment interest on that sum ($2,729,852.70), and expenditures made to benefit the property ($376,076.00).

## ANALYSIS

The rule of decision respecting the availability of rescission is federal law, not state law. Specifically, the federal rule is that whether to grant or withhold rescission is discretionary in accord with sound principles of equity.

Two decisions bear on whether federal rather than state law guides the rescission issue in the circumstances of our action.  One is *Holmberg v. Armbrecht*, 327 U.S. 392 (1946).  There, the claim arose under a federal statute.  The question was the degree to which a state statute of limitations applied in federal equity.  The Supreme Court drew a distinction between diversity suits, where a federal court is, in effect, "only another court of the State," and federal question suits:

> We do not have the duty of a federal court, sitting as it were as a court of a State, to approximate as closely as may be State law in order to vindicate without discrimination a right derived solely from a State.  We have the duty of federal

United States District Court
For the Northern District of California

2

> courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress.

*Id.* at 395.

The second decision is *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943). There, the United States sued to recover on a check that had been stolen and cashed with a forged signature. The issue was whether a delay barred the action. Though no federal statute governed the action, the Supreme Court held that the rule from *Erie* did not apply because:

> The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. . . . In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards. . . .
>
> In our choice of the applicable federal rule we have occasionally selected state law. But reasons which may make state law at times the appropriate federal rule are singularly inappropriate here.

*Id.* at 366–67 (citation omitted). Later decisions emphasize the presence of a federal interest and a significant conflict with state law in applying a federal rule of decision. *See, e.g.*, *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507–08 (1988). These precedents militate in favor of displacing state law, even in the absence of an underlying federal claim, when a national interest is implicated and the remedy sought is equitable.

Federal question jurisdiction arose here from the necessary, substantial, and disputed issue of the effect of the NCUA's exercise of its contract repudiation power (*see* Dkt. No. 50). A federal question arises not only if "law that creates the cause of action" is federal law, but also:

> [If the] state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Specifically, in the instant action, state law claims necessarily raised the federal issue of whether the lease was effectively repudiated by the NCUA's regulatory powers because the lawsuit pretended the liquidation never occurred; this federal issue was actually disputed because plaintiff's theory was that before the takeover and liquidation there was a *de facto* merger between Kaiperm and another credit union, Alliant Credit Union, rendering the NCUA's action a nullity; and the issue was substantial because it went to the heart of liability.

United States District Court
For the Northern District of California

Thus, in the instant action, federal question jurisdiction came indirectly via 12 U.S.C. 1787(c)(1), which provides:

> In addition to any other rights a conservator or liquidating agent may have, the conservator or liquidating agent for any insured credit union may disaffirm or repudiate any contract or lease —
>
> (A) to which such credit union is a party;
>
> (B) the performance of which the conservator or liquidating agent, in the conservator's or liquidating agent's discretion, determines to be burdensome; and
>
> (C) the disaffirmance or repudiation of which the conservator or liquidating agent determines, in the conservator's or liquidating agent's discretion, will promote the orderly administration of the credit union's affairs.

Congress gave the NCUA its contract repudiation power in the wake of the savings-and-loan crisis specifically to shore up the lending industry, safeguard the availability of affordable housing, and protect the national economy — federal interests that are once again paramount. *See* H.R. REP. NO. 101-54(I), at 307–08 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 103–04.

A mechanical application of California's rescission statutes would present a significant conflict with the federal interest in efficiently conserving and liquidating failed federal credit unions. *See* Cal. Civ. Code §§ 1689 *et seq*. Rescinding the sale-leaseback between plaintiff and Kaiperm would necessarily negate NCUA's decision to repudiate the lease. Saddling the NCUA with unwanted real estate would hinder, not promote, its mission.

Given this jurisdictional foundation and given the federal interest involved, the exercise of equitable relief will be guided by federal, not state, principles of equity.

\*               \*               \*

"In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." *Clearfield Trust*, 318 U.S. at 367. The standards governing rescission come from equity:

> The basis of all equitable rules is the principle of discretionary application. . . .
>
> Equity jurisdiction being recognized, the question whether it will be exercised rests in the sound discretion of the chancellor. It must be a legal discretion based on principles of law and not on the arbitrary will of the chancellor.

*Yuba Consol. Gold Fields v. Kilkeary*, 206 F.2d 884, 889 (9th Cir. 1953).

**United States District Court**
For the Northern District of California

The foregoing establishes that the decision whether rescission will be granted or withheld is governed by the discretionary application of federal equity principles.  After much briefing, plaintiff's counsel now seems to agree that the standard to be applied is one of discretion.[*]

*        *        *

While plaintiff obtained a fraud verdict, we cannot assume that the jurors subscribed to every fraud theme placed before them at trial.  Plaintiff packed its blunderbuss with all manner of fraud allegations.  These included arguments that Kaiperm signed the lease knowing it would not honor it, lied about its financial position, kept quiet about a planned merger, faked NCUA approval for the deal, concealed its special action status, concealed that it had been assigned a problem case officer, and concealed the existence of bad loans, management problems, and a strapped budget.  Some of these allegations were grave, some pedestrian.  It is unknown which, if any, of these pellets drew blood, and it would be unfair to award rescission by assuming that the jury accepted the worst case described by the plaintiff.  For all we can tell, the jury merely accepted one of the lesser fraud theories, such as defendants telling plaintiff that the NCUA had "approved" the deal when it had not done so.

Plaintiff is unhappy with the size of the verdict so it seeks equitable intervention to undo the entire deal.  It cannot be said, however, that plaintiff was denied an opportunity for a plain, adequate, and complete remedy at law.  Plaintiff had a fair shot, came close, but did not win the grand prize.  But the remedy made available was perfectly adequate; the jury award is enforceable and readily collectible.

The undersigned judge, sitting as chancellor, heard the evidence.  This was not a strong fraud case.  There was indisputable, clear-cut evidence that plaintiff knew that Kaiperm was

---

* It is worth noting that even under California law, rescission would not be mandatory, contrary to plaintiff's original view.  California law does not permit rescission when the rights of third parties have intervened and circumstances have so far changed that rescission would injure those parties.  *See Gill v. Rich*, 128 Cal. App. 4th 1254, 1265 (2005).  California judges have the discretion to withhold equitable remedies. *See Fairchild v. Raines*, 24 Cal. 2d 818, 826 (1944).  That discretion is exercised in accord with the facts and circumstances of the case and in accord with the principles and precedents of equity jurisprudence.  *See Hicks v. Clayton*, 67 Cal. App. 3d 251, 265 (1977).

United States District Court

For the Northern District of California

losing up to $2.2 million a year and had a true net worth of only eight to ten million dollars. This must be repeated: Plaintiff knew that Kaiperm was going down and going down at an alarming rate that would not sustain a fifteen-year lease. This evidence was consistent with the view that plaintiff did not much care about the solvency of their tenant because, at the time, the real estate market was strong — the word used at trial was "frothy." It would not have been unusual for this landlord to be willing to gamble on its tenant's solvency because it would have been easily replaced. This circumstance changed, of course, *after the deal* when the economy collapsed. In short, this is not a strong case for the application of equity. The verdict more closely matches the equities than would rescission, which would, in the chancellor's view, be a disproportionate remedy.

## CONCLUSION

For the reasons above, plaintiff's motion to amend the judgment to award rescission is DENIED.


**IT IS SO ORDERED.**


Dated:  December 7, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE